**ORIGINAL**

# United States Court of Federal Claims

No. 04-1128 V
(Filed Under Seal: April 18, 2016)
(Reissued: May 3, 2016)*
**UNPUBLISHED**

**FILED**
MAY - 3 2016
U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| DARIUS AND TERESITA CANUTO, on behalf of DAC, <br><br> Petitioners, <br><br> v. <br><br> THE SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1-34; Motion for Review; *Pro se* Petitioners |

*Darius and Teresita Canuto, pro se*, petitioners.

*Voris Edward Johnson*, United States Department of Justice, Civil Division, Washington, DC, for respondent.

## OPINION AND ORDER

**YOCK,** *Senior Judge.*

This case comes before the court on petitioners' motion for review of Special Master Hastings' decision, which denied the petitioners' claim for compensation under the National Vaccine Injury Compensation Program. 42 U.S.C. § 300aa—10 *et seq.* (2012 ed.). After thorough consideration of the entire record in this matter, the court will deny petitioners' motion and affirm the special master's decision.

### FACTUAL BACKGROUND

Special Master Hastings provided an exhaustive recitation of the facts in his decision. Dec. at 8-13. The court refers readers to that decision for a comprehensive

---

* This opinion originally was issued under seal on April 18, 2016. The court afforded the parties an opportunity to propose redactions in the opinion prior to its reissue. No such redactions were proposed.

discussion of the facts of this case. However, the court will provide a brief overview of the case's most pertinent facts for the convenience of the reader.

Petitioners' son ("DAC") was born on July 17, 2000, in Bocaue, Philippines. Ex. 4 at 1. His physicians noted that he was a "well baby" and in good health. Ex. 13 at 1. He received several routine early childhood vaccines, including two doses of a combined diphtheria, tetanus, and whole-cell pertussis as well as a hepatitis B vaccine.[1] Ex. 13 at 1-2.

Several months later, petitioners and their son relocated to Los Angeles, California, where DAC received additional vaccinations, including a vaccine for diphtheria, tetanus, and acellular pertussis. Ex. 15 at 1-3. Around this time, DAC also received vaccinations for haemophilus influenzae type b, measles, mumps, rubella, and chickenpox.

Beginning at his one year checkup, on August 3, 2001, DAC's physicians noted signs of potential developmental delay. Ex. 17. During this visit DAC received a vaccination for measles, mumps, and rubella. Over the next few months, DAC continued to struggle with speech and language development and was diagnosed with severe to profound expressive and receptive language disorder on October 30, 2003. Ex. 34 at 2. At this point, DAC had a 40 word vocabulary and did not speak more than one word at a time. *Id.*

On March 15, 2004, DAC met with a developmental behavioral pediatrician, who diagnosed him with autism. Ex. 39 at 4. At this stage, his linguistic skills tested at a developmental age of 30.4 months and his chronological age was 44 months. DAC displayed delayed language skills, difficulty interacting with peers, and limited play skills. Ex. 39 at 3. In March of 2006, a psychoeducational assessment of DAC confirmed his prior autism diagnosis. Ex. 53.

On July 6, 2004, Darius and Teresita Canuto filed a short-form autism petition on behalf of DAC. On December 18, 2015, the special master issued his decision, *Canuto v. Sec'y of Health & Human Servs.*, No. 04-1128V, 2015 WL 9854939 (Fed. Cl. Sp. Mstr. Dec. 18, 2015), which denied petitioners' claim. Petitioners filed their motion for review of the special master's decision on January 12, 2016. ECF No. 61. The respondent filed its response on February 11, 2016. ECF No. 65.

---

[1] The special master noted that DAC's vaccination outside of the United States could potentially be fatal to petitioners' claim. Dec at 19. Petitioners respond that this technical defect should be ignored because vaccines manufactured outside of the United States are sometimes administered domestically. Pet'r's Memorandum of Objections at 16-17. Regardless, because the special master's decision does not rely on this issue, the court does not reach the question of whether this potential defect would have required the denial of petitioners' claim.

## STANDARDS

This court has jurisdiction to review a special master's decision in a Vaccine Act case upon a properly filed petition for review. 42 U.S.C. § 300aa—12(e)(1). The court may set aside any of the special master's findings of fact or conclusions of law if those determinations were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* at 12(e)(2)(B).

The court applies different standards to conclusions of law, findings of fact, and discretionary rulings. *Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283, 1287-88 (Fed. Cir. 2011)[2]; *see also Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 871 no. 10 (Fed. Cir. 1992); *Pafford v. Sec'y of Health and Human Servs.*, 64 Fed. Cl. 19, 27 (2005), *aff'd*, 451 F.3d 1352 (Fed. Cir. 2006). The court reviews conclusions of law under the "not in accordance with the law" standard," findings of fact under the arbitrary and capricious standard, and discretionary rulings under the "abuse of discretion" standard. *Saunders v. Sec'y of Health & Human Servs.*, 25 F.3d 1031, 1033 (Fed. Cir. 1994).

The arbitrary and capricious standard is "well understood to be the most deferential [standard] possible." *Munn*, 970 F.2d at 870. "If the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate.'" *Hibbard v. Sec'y of Health & Human Servs.*, 698 F.3d at 1363 (quoting *Hines on Behalf of Sevier v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)). "Congress assigned to a group of specialists, the Special Masters within the Court of Federal Claims, the unenviable job of sorting through these painful cases and, based upon their accumulated expertise in the field, judging the merits of the individual claims." *Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs.*, 717 F.3d 1363, 1366 (Fed. Cir. 2013) (quoting *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (internal citations omitted)). It is not the role of this court to "reweigh the factual evidence," "assess whether the special master correctly evaluated the evidence," or "examine the probative value of the evidence or the credibility of the witnesses." *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2010).

---

[2] "Under the Vaccine Act, [the Circuit] review[s] a decision of the special master under the same standard as the Court of Federal Claims." *Masias*, 634 F.3d at 1287.

## DISCUSSION

Petitioners contend that the special master erred in rejecting their theory of causation between vaccines[3] and autism. To be successful, petitioners "must do more than demonstrate a 'plausible' or 'possible' causal link between the vaccination and injury." *W.C. v. Sec'y of Health & Human Servs.*, 704 F.3d 1352, 1356 (Fed. Cir. 2013). The statutory standard requires "a petitioner to demonstrate that the vaccine more likely than not caused the condition alleged." *LaLonde*, 746 F.3d at 1339. In doing so, a petitioner "must provide a reputable medical or scientific explanation" which is "legally probable" if not "medically or scientifically certain." *Moberly*, 592 F.3d at 1322 (citing *Knudson v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548-49 (Fed. Cir. 1994)).

The special master analyzed petitioners' theory under the three-prong test for causation in off-table claims,[4] as set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).[5] Under *Althen*, petitioners must demonstrate by preponderant evidence that vaccination brought about the alleged injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury. *Althen*, 418 F.3d at 1278. If a petitioner satisfies this burden, they are entitled to recover unless the government demonstrates by a preponderance of the evidence that the injury was in fact caused by unrelated factors. *Id.*

The special master determined that petitioners had not carried their burden, finding that they had not satisfied any of the *Althen* test's three prongs. Dec. at 26-27. Indeed, the special master concluded that petitioners had "*failed* to present even a *prima facie* case that any of DAC's vaccinations played *any* role in causing or aggravating his autism." Dec. at 24 (emphasis included). The special master based his decision to a considerable extent on the testimony and credibility of the parties' experts, but he also discussed DAC's medical records and the testimony of his parents and other family members describing DAC's condition.

The special master meticulously detailed this evidence, providing a comprehensive and thorough analysis. Dec. at 8-13. Particularly, the special master gave weighty consideration to DAC's medical records. The special master noted a conflict between

---

[3] Petitioners' allege that the measles-mumps-rubella, diphtheria-tetanus-pertussis, diphtheria-tetanus-acellular pertussis, hepatitis B, and haemophilus influenzae type b vaccines, or some combination thereof, caused DAC's autism.

[4] Autism is not listed on the Vaccine Injury Table and, therefore, petitioners must demonstrate that the vaccines in question were the cause-in-fact of DAC's injuries. § 300aa—13(a)(1)(B); § 300aa—11(c)(1)(C)(ii).

[5] Petitioners submitted a short-form autism petition. To the extent that petitioners allege other, non-autism-based causation theories, those theories cannot be raised here because they were not alleged in the petition considered by the special master.

DAC's contemporaneous medical records and petitioners' testimony. Dec. at 12. Although petitioners allege that DAC suffered from seizures, his contemporaneous medical records showed no support for this claim. The special master found that this was particularly troubling since petitioners contended that DAC suffered nine different seizures over a three-year period. *Id.* (citing Ex. 21 at 2). The special master commented that for DAC's pediatricians to "not recognize and not record a description of a seizure in one instance would be unusual enough." *Id.* Ultimately, the special master concluded that DAC's medical records provided the most credible evidence on DAC's symptoms, noting that, where conflict exists, medical records are "frequently accord[ed] more weight" than conflicting subsequent testimony. *Id.*

The special master next considered the testimony from the parties' experts, Dr. Max Wiznitzer, for respondent, and Dr. Mark Levin, for petitioners. Dec. at 20-28. The special master began his analysis with a comparison of Dr. Wiznitzer's and Dr. Levin's credentials. Dec. at 15. The special master found that Dr. Wiznitzer was very credible, citing his specialty in pediatrics and developmental disorders and extensive history with neurology and autism. *Id.* Conversely, the special master noted that Dr. Levin had limited experience with autism and found that Dr. Levin's his specialty in the fields of oncology and hematology lent his opinion less weight. The special master then turned to Dr. Levin's theory connecting the DTP vaccine and autism. Dec. at 21.

Dr. Levin based his theory on the general rise of autism rates in the United States and the timing between vaccination and autism onset in DAC's specific case. Levin Report at 3-4. The special master did not find Dr. Levin's theory credible, describing it as "largely, if not entirely, unsupported speculation." Dec. at 21. The special master found that Dr. Levin did not actually offer any scientific support for the notion that the DTP vaccine can cause autism and concurred with Dr. Wiznitzer's observation that Dr. Levin "offer[ed] no causal theory whatsoever." *Id.* (citing Ex. A at 6). The special master also noted Dr. Levin's admission that this theory is debatable, finding Dr. Levin's opinion "equivocal in addition to unsupported." *Id.* The special master concluded that Dr. Levin's opinion on this point was ultimately "wholly unpersuasive regarding every element necessary to proving causation-in-fact." *Id.*

The special master was similarly unpersuaded by Dr. Levin's opinion on whether vaccines caused autism in DAC specifically. The special master found Dr. Levin's opinion inadequate because it was "predicated entirely" on the alleged temporal relationship between DAC's vaccinations and injury. As the special master noted, "a temporal connection alone is not enough to demonstrate causation." Dec. at 22 (quoting *LaLonde v. Sec'y of Health & Human Servs.*, 746 F.3d 1334, 1341 (Fed. Cir. 2004)).

The special master was also troubled by Dr. Levin's confusion over the record. Dec. at 22-23. The special master noted that "Dr. Levin's very limited discussion of DAC's medical history was mistaken on the critical point of identifying the type of

vaccinations that DAC actually received." Dec. at 22. The special master commented that Dr. Levin's confusion resulted in an expert report that was "actually quite incoherent." Dec. at 22-23.

In sum, the special master weighed the opinions of Dr. Levin and Dr. Wiznitzer[6] on petitioners' theory for causation and determined that the latter "was far more persuasive." Dec. at 24. The special master found that Dr. Wiznitzer "fully rebutted" Dr. Levin's "very weak" opinion and that Dr. Wiznitzer was both better qualified and better supported by the facts. *Id.* In the special master's view, Dr. Wiznitzer's opinion provided "an explanation of DAC's condition that better accounts for DAC's complete medical history." *Id.*

The special master's assessment of the experts, medical records, and other evidence and conclusion that petitioners had failed to demonstrate a causal link between DAC's vaccines and autism was not arbitrary or capricious. The record reflects that the special master carefully and thoroughly weighed the evidence before him and determined that petitioners had not provided a legally probable theory of causation-in-fact. The special master appropriately evaluated the parties' expert witnesses' credibility, citing their credentials, mastery of DAC's medical records, and ability to support their theories.

The court also notes that causation theories based on autism have been uniformly rejected. An initial round of test claims based on autism theories were brought and denied as part of an omnibus proceeding. *Cedillo v. Sec'y of Health & Human Servs.*, 617 F.3d 1328 (Fed. Cir. 2010); *Hazlehurst v. Sec'y of Health & Human Servs.*, 604 F.3d 1343 (Fed. Cir. 2010); *Snyder v. Sec'y of Health & Human Servs.*, 88 Fed. Cl. 706 (2009); *Dwyer v. Sec'y of Health & Human Servs.*, No. 03-1202V, 2010 WL 892250 (Fed. Cl. Spec. Mstr. Mar. 12, 201); *King v. Sec'y of Health & Human Servs.*, No. 03-584V, 2010 WL 892296 (Fed. Cl. Spec. Mstr. Mar 12, 2010); *Mead v. Sec'y of Health & Human Servs.*, No. 03-215V, 2010 WL 892248 (Fed. Cl. Spec. Mstr. Mar. 12, 2010). Subsequently, special masters have rejected numerous claims based on autism.[7]

---

[6] The court notes that the petitioners, themselves, provided the special master with documents purporting to demonstrate a causal link between vaccines and autism. The special master found that petitioners were not qualified to make assertions based on these submissions under 42 U.S.C. § 300aa—(13)(a)(1). In the alternative, the special master found that Dr. Wiznitzer's contrary opinion was more persuasive.

[7] *See e.g.*, Blake v. HHS, No. 03-31V, 2014 WL 2769979 (Fed. Cl. Spec. Mstr. Vowell May 21, 2014); Henderson v. HHS, No. 09-616V, 2012 WL 5194060 (Fed. Cl. Spec. Mstr. Vowell Sept. 28, 2012); Franklin v. HHS, No. 99-855V, 2013 WL 3755954 (Fed. Cl. Spec. Mstr. Hastings May 16, 2013); Coombs v. HHS, No. 08-818V, 2014 WL 1677584 (Fed. Cl. Spec. Mstr. Hastings Apr. 8, 2014); Long v. HHS, No. 08-792V, 2015 WL 1011740 (Fed. Cl. Spec. Mstr. Hastings Feb. 19, 2015); Brook v. HHS, No. 04-405V, 2015 WL 3799646 (Fed. Cl. Spec. Mstr. Hastings May 14, 2015); Holt v. HHS, No. 05-136V, 2015 WL 4381588 (Fed. Cl. Spec. Mstr. Vowell June 24, 2015); Lehner v. HHS, No. 08-554V, 2015 WL 5443461 (Fed. Cl. Spec. Mstr. Vowell July 22, 2015); Miller v. HHS, No. 02-235V, 2015 WL 5456093 (Fed. Cl. Spec. Mstr. Vowell August 18, 2015); Allen v HHS, No. 02-1237V, 2015 WL 6160215 (Fed. Cl. Spec. Mstr. Vowell Sept. 26, 2015); R.K. v. HHS (Fed. Cl. Spec. Mstr. Vowell Sept. 28, 2015).

It is not the role of this court to reconsider the "probative value of the evidence or the credibility of the witnesses." *Lampe*, 219 F.3d at 1360. Here, the special master "has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision" and, therefore, the court will not disturb his decision in this case. *Hines*, 940 F.2d at 1528.

## CONCLUSION

Accordingly, petitioners' MOTION for review is DENIED. The special master's decision is affirmed. The Clerk is hereby directed to enter judgment according to the special master's decision.

**IT IS SO ORDERED.**

_____
Robert J. Yock
Senior Judge